IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL ROSEN,** )<br>730 24th Street, N.W., Apt. 210 )<br>Washington, DC  20038 )<br>  )<br>          **Plaintiff,** )<br>  )<br>  vs. )<br>  )<br>**AMAZON.COM, INC.** )<br>**Serve: Corporation Service Company** )<br>   251 Little Falls Drive )<br>   Wilmington, DE 19808 )<br>  )<br>**AMAZON.COM, LLC** )<br>**Serve: Corporation Service Company** )<br>   251 Little Falls Drive )<br>   Wilmington, DE 19808 )<br>  )<br>**AMAZON.COM SERVICES, LLC** )<br>**Serve: Corporation Service Company** )<br>   1090 Vermont Avenue, N.W. )<br>   Washington, DC 20005 )<br>  )<br>**AMAZON.COM SALES, INC.** )<br>**Serve: Corporation Service Company** )<br>   1090 Vermont Avenue, N.W. )<br>   Washington, DC 20005 )<br>  )<br>**AMAZON.COM.CA, INC.** )<br>**Serve: Corporation Service Company** )<br>   1090 Vermont Avenue, N.W. )<br>   Washington, DC 20005 )<br>  )<br>          **Defendants.** )<br>_____ ) | **Case No.** _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Michael Rosen ("Rosen"), by and through undersigned counsel, submits this Complaint against Amazon.com, Inc., and, in support, states as follows:

1

1.     Plaintiff is a resident of Washington, D.C., with an address of 730 24th Street, N.W., Apt. 210, Washington, D.C. 20038.

2.     Defendant Amazon.com, Inc. is a Delaware corporation engaged in the sale and distribution of consumer products including the pull-up bar described below. Its headquarters is located at 410 Terry Avenue North, Seattle, Washington 98109.

3.     Defendant Amazon.com, LLC is a Delaware corporation engaged in the sale and distribution of consumer products including the pull-up bar described below. Its headquarters is located at 410 Terry Avenue North, Seattle, Washington 98109.

4.     Defendant Amazon.com Services, LLC is a Delaware corporation engaged in the sale and distribution of consumer products including the pull-up bar described below. Its headquarters is located at 410 Terry Avenue North, Seattle, Washington 98109.

5.     Defendant Amazon.com Sales, Inc. is a Delaware corporation engaged in the sale and distribution of consumer products including the pull-up bar described below. Its headquarters is located at 410 Terry Avenue North, Seattle, Washington 98109.

6.     Defendant Amazon.com.ca, Inc. is a Delaware corporation engaged in the sale and distribution of consumer products including the pull-up bar described below. Its headquarters is located at 410 Terry Avenue North, Seattle, Washington 98109.

7.     "Amazon" or "Defendants" refers to all Amazon entities listed as Defendants.

## JURISDICTION AND VENUE

8.     The Court has personal jurisdiction over Amazon pursuant to D.C. Code §§ 13-423 (1981) and 13-334 and is based on Defendants' business activities in the District of Columbia and its acts and omissions causing injury to Michael Rosen in the District of Columbia.

9.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between a citizen of one state and a corporation incorporated in another

state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.

10. Venue is proper in Washington, D.C. because the events that gave rise to the injury occurred in Washington, D.C., where the Plaintiff is domiciled.

## ALLEGATIONS COMMON TO ALL COUNTS

11. In early February of 2021, Plaintiff Michael Rosen purchased a Becoolar Doorway Pull Up Bar ("pull-up bar") on Amazon.com. The product details provided in small lettering on the right side of the webpage indicate: "Ships from: Amazon; Sold by: Lantianyu."

12. Under Defendants' Amazon Services Business Solutions Agreement ("Agreement"), Amazon explains the terms of the Fulfilled by Amazon ("FBA") program. In the Agreement, "you" means the applicant, the third-party seller, and "we" means "the Amazon Contracting Party and any of its applicable Affiliates," typically Amazon.com Services, LLC.

13. The Agreement states that "[y]ou will not deliver to us any Unsuitable Unit; we may reject any shipment of Your Products." It specifies: "We may dispose of any Unsuitable Unit (and you will be deemed to have consented to our action): (d) immediately if we determine that (i) the Unit creates a safety, health, or liability risk to Amazon, our personnel or any third party." Under the FBA program, Amazon "will ship Units from our inventory of Your Products to the shipping addresses in the Elected Country." The Agreement establishes that Amazon will store the inventory of third-party sellers in Amazon's so-called fulfillment centers.

14. The Agreement contains an indemnification clause: ". . . you also agree to indemnify, defend, and hold harmless us [sic] . . . against any Claim that arises . . . including any personal injury . . ."

15. The Agreement requires that "[i]f the gross proceeds from Your Transactions exceed the applicable Insurance Threshold," defined in the Agreement as $10,000 if the Elected

3

Country is the United States, "you," the third-party seller, "will maintain at your expense . . . umbrella or excess liability insurance . . . with policy(ies) naming Amazon and its assignees as additional insureds."

16. Amazon has complete control over cancellation, returns and refunds under the FBA program: It "may in [its] sole discretion accept, calculate, and process cancellations, returns, refunds, and adjustments for the benefit of customers."

17. Upon information and belief, the pull-up bar that Rosen purchased was designed, manufactured, and sold by Prosource Fit, a Chinese company doing business as "Lantianyu." Rosen purchased the pull-up bar through the Amazon marketplace, and the pull-up bar was shipped to Rosen through the FBA program.

18. On or about February 4, 2021, the package containing the pull-up bar was delivered to Rosen's residence. The product arrived from 1600 Worldwide Blvd., Hebron, KY 41048, an Amazon Fulfillment Center, in a package with the recognizable Amazon logo.

19. Rosen installed the pull-up bar with the help of his building manager. Rosen and the building manager complied with all the installation instructions contained in the accompanying brochure labeled "Door frame trainer."

20. After installation, the building manager, who Plaintiff estimates is approximately 5 feet, 9 inches tall and weighs approximately 150 pounds, tested the bar's safety. The bar remained fixed in place when he applied his full weight.

21. Next, Rosen, who is 6 feet, 2 inches tall and weighs 168 pounds, tried the pull-up bar. Due to his height, Rosen had to bend his knees to perform the pull-up. The bar became dislodged from the door frame, causing Rosen to fall to the floor and fracture his right patella in two places.

22. Rosen underwent an open reduction and internal fixation (ORIF) surgery on his right patella.

23. Rosen also underwent and continues to undergo physical therapy to rehabilitate his knee.

**CAUSES OF ACTION**

COUNT I
(Strict Liability – Defective Design)

24. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

25. The pull-up bar was expected to reach and did reach Rosen without substantial change in its condition.

26. Amazon placed the pull-up bar into the stream of commerce, acted as a seller, and distributed the product in a defective and unreasonably dangerous condition in that it distributed a pull-up bar that was prone to becoming dislodged even when the user complied with all instructions. The pull-up bar became dislodged from the door frame after being properly installed, causing injury to Rosen who is well below the 300-pound maximum that the product claims to be able to hold.

27. Amazon was engaged in the business of selling fitness products generally and the pull-up bar that caused Plaintiff's injury specifically.

28. The pull-up bar's defective design directly and proximately caused Rosen's injuries. His use of the pull-up bar as it was intended to be used caused him to fall and injure his knee.

## COUNT II
(Strict Liability – Failure to Warn)

29. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

30. Amazon introduced the pull-up bar into the stream of commerce, acted as a seller, and distributed it to Plaintiff.

31. The pull-up bar was in an unreasonably dangerous and defective condition in that Amazon failed to adequately warn purchasers of the danger of the pull-up bar becoming dislodged even when used in accordance with the directions.

32. The pull-up bar reached Rosen without any substantial change in its condition and was in the same condition at the time Rosen sustained his injury.

33. For the pull-up bar to be non-defective and reasonably safe for use, it should have contained or been accompanied by a warning explaining that it could become dislodged from the door frame and further describing steps the user could take to prevent such dislodging.

34. The warnings in the brochure – including warnings such as, "Fitness training can result in serious or fatal injury. Practicing safety and common sense can reduce the risk of injury. Always check equipment for worn or damaged parts before using. If any defects are found with this product, DO NOT USE."; "Before use, carefully read and understand all of the following directions for proper installation. Also, make sure the door frame and moldings are secure and solid before installing Door Gym."; and "The Door Gym is easy to assemble. Just secure the pieces together tightly as pictured." – were not adequate to warn the user of the specific risk of the pull-up bar becoming dislodged.

35. Prior to use, Rosen checked the equipment which had no noticeable damaged parts or visible defect, and utilized common sense and good safety in his installation and usage of the

pull-up bar. He followed all directions for proper installation, including securing the pieces together tightly as pictured.

36. Nevertheless, Plaintiff was harmed and suffered the injuries and damages alleged as a direct and proximate result of Defendants' failure to adequately warn.

COUNT III
(Strict Liability – Manufacturing Defect)

37. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

38. Amazon placed the pull-up bar into the stream of commerce, acted as a seller, and distributed it to customers who purchased it on its online marketplace.

39. Amazon participated in the sale and distribution of the pull-up bar in a defective and unreasonably dangerous condition in that the pull-up bar contained a manufacturing flaw which resulted in the pull-up bar becoming dislodged from the door frame and causing injuries to Rosen's knee. The pull-up bar contained a manufacturing defect in that it departed from its intended design.

40. The pull-up bar reached Rosen without any substantial change in its condition and was in the same condition at the time he suffered injury.

41. Plaintiff was harmed and suffered the injuries and damages alleged as a direct and proximate result of Defendants' role in distributing a pull-up bar with a manufacturing defect.

42. Amazon is liable for the manufacturing defect as it played a substantial role in placing the product into the stream of commerce, acted as a seller, processed payment, and shipped the product to Rosen.

## COUNT IV
### (Negligence)

43. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

44. At all material times, Amazon had an obligation and duty, once it decided to offer the pull-up bar for purchase on its online marketplace, to distribute a product that was designed and manufactured with reasonable care and not unreasonably dangerous. Defendants owe a duty to Rosen by virtue of inserting the pull-up bar into the stream of commerce and by virtue of their FBA program as set forth in the Agreement.

45. At all material times, Amazon knew or, in the exercise of reasonable care, should have known that the pull-up bar, when installed and used as intended, could result in the pull-up bar becoming dislodged from the door frame and causing injury to the user.

46. Amazon breached its duty to ensure that the pull-up bar sold on its online marketplace was designed and manufactured with reasonable care when it provided the product for purchase on its online marketplace and fulfilled the transaction.

47. As a direct and proximate result of the negligent design and manufacture of the pull-up bar and Amazon's decision to aid in the sale and distribution of same and profit therefrom, Rosen suffered damages as previously set forth herein.

## COUNT V
### (Negligent Failure to Warn)

48. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

49. At all material times, Amazon had an obligation and duty, once it offered the pull-up bar for purchase on its online marketplace, to adequately warn purchasers of the product of all

potential, non-obvious dangers that were reasonably foreseeable from the knowledge it had or reasonably should have had.

50. Plaintiff and other ordinary consumers would neither recognize nor have knowledge that the pull-up bar was unreasonably dangerous and defective.

51. Although Amazon knew or should have known of the potential risks and substantial danger to users of the pull-up bar, it failed to adequately warn or instruct of the potential risks and dangerous and defective conditions of the pull-up bar, thereby breaching its duty to warn.

52. Plaintiff was harmed and suffered the injuries and damages alleged as a result of Defendants' failure to adequately warn. The lack of sufficient warning or instructions was a direct and proximate cause of Plaintiff's knee injury.

## COUNT VI
### (Breach of Implied Warranty)

53. Plaintiff incorporates by reference the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

54. At the time of the sale and delivery of the pull-up bar, Amazon impliedly warranted to Rosen that the pull-up bar was merchantable and fit for the ordinary purpose for which pull-up bars are intended, namely, for the performance of pull-ups.

55. Pursuant to the "implied warranty of merchantability," the pull-up bar was not merchantable when Amazon introduced it into the stream of commerce because the pull-up bar was not fit for the ordinary purpose for which goods of this type are used, *i.e.*, doing pull-ups. D.C. Code Ann. § 28:2A-212 (West). Defendants are in the regular business of fulfilling the sale of this type of good, *i.e.*, fitness products. The pull-up bar was not in the same quality as those generally acceptable in the industry. Specifically, the product was unable to hold 168 pounds even though the product details claimed that the bar could hold as much as 300 pounds.

56. Prosource Fit or "Lantianyu" held itself out as possessing superior knowledge and skill in the operation and use of the pull-up bar. Rosen relied on Amazon's decision to aid in the sale and distribution of Prosource Fit's pull-up bar and profit therefrom when he purchased the pull-up bar.

57. The pull-up bar's failure to meet expected quality standards and Amazon's role in introducing the pull-up bar into the stream of commerce was a direct and proximate cause of Rosen's severe personal injuries and resulting damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as appropriate to each cause of action alleged as follows:

I. Compensatory damages in excess of $75,000.00 comprised of, but not limited to:

   a. Physical pain and suffering in the past and which, in reasonable probability, Plaintiff MICHAEL ROSEN will continue to suffer in the future;

   b. Physical impairment and incapacity in the past and which, in reasonable probability, Plaintiff MICHAEL ROSEN will continue to suffer in the future;

   c. Mental anguish in the past and which, in reasonable probability, Plaintiff MICHAEL ROSEN will sustain in the future;

   d. Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses Plaintiff MICHAEL ROSEN will incur in the future;

   e. Disfigurement in the past and which, in reasonable probability, Plaintiff MICHAEL ROSEN will continue to suffer in the future;

II. Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

III. Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post-judgment interest pursuant to the laws of Washington, D.C., as authorized by law on the judgments entered in Plaintiff's behalf; and

IV. Such other relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues in this matter.

Respectfully submitted,

*/s/ Daniel A. Brown*
Daniel A. Brown (Bar No. 14360)
Matthew E. Kiely (Bar No. 01706)
BROWN | KIELY, LLP
4915 Saint Elmo Avenue, Suite 510
Bethesda, MD 20814
301-718-4548
dbrown@brownkielylaw.com
mkiely@brownkielylaw.com

*Counsel for Plaintiff*